August 23, 2002

OBA Midwest
8160 S. Cass Ave.
Darien, IL 60561

Attn: Ms. Lisa Frasco

Dear Ms. Frasco:

    I wish to appeal the benefit denial set forth in your letter of June 28, 2002. In support of my appeal, I enclose a legal brief in support thereof.

                                            Yours truly,



EXHIBIT F

**Brief in Support of Appeal**

Payment of medical bills was initially denied pursuant to the limitations on page 38 of the Summary Plan Description ("SPD") which apply only to claims for accidental death and dismemberment benefits. This reason for denial has now apparently been abandoned as it is not referenced in the letter of Lisa Frasco dated June 28, 2002. Because of this change in rationale no further response will be directed to that claimed exclusion.

The denial was based upon exclusions read into the SPD which do not exist and upon an unreasonable and inconsistent interpretation of the provisions of the SPD.

ERISA and the Regulations

ERISA provides at 29 USC §1022(a) that the SPD "... shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprize such participants and beneficiaries of their rights and obligations under the plan." At subparagraph 29 USC §1022(b) Congress provided that any exclusions in coverage must be specifically set forth in the SPD. "The summary plan description shall contain the following information:...circumstances which may result in disqualification, ineligibility, or denial or loss of benefits...." The administrator is violating this provision of ERISA by asserting exclusion which do not appear in the SPD.

The regulations established by the Department of Labor state that any limitation on benefits must be described by clear and specific language 29 CFR §2520.102-2(b) Since ERISA requires terms to be written in a manner calculated to be understood by the average plan participant, those terms should be given a meaning normally attributed to them by a person of average intelligence and experience. *Hamilton v. AIG Life Ins. Co.*, 182 F. Supp. 2d 39. To be consistent with the substantive provisions of ERISA, the definition of "self-inflicted" must be consistent with the ordinary meaning of the term. *West v. Aetna Life Insurance Company*, 171 F. Supp. 2d 856.

The Summary Plan Description - Failure to Contain Exclusions Relied Upon

The SPD states that "Payment (of benefits) will not be made for self-inflicted injury such as attempted suicide" at page 39 and "The Trustees will not be liable for losses to which a contributing cause was the commission of or attempt to commit a felony by the person whose Accidental Bodily Injury or Sickness is the basis of claim, or to which a contributing cause was such person's being engaged in an illegal occupation," at page 40. The administrator now relies on these two exclusion to deny this claim.

There is no alcohol/drug exclusion or illegal activity exclusion in the SPD. To get around this the administrator takes the position that "self-inflicted injury" and "illegal occupation" means the same thing as the omitted exclusions. Also, "There is no 'including but not limited to' language preceding the list of specific exceptions. Thus, as a matter of plain meaning, the goal of the UPS Plan is to pay benefits...except where expressly excluded." *West v. Aetna Life Ins. Co.*, 171 F. Supp. 2d 856. Contrary to this principle announced in the *West* case, the administrator has chosen to refuse

benefits even though there is no express exclusion. "Insurance contracts should be construed, if reasonably possible, in favor of coverage." *Byrd v. Nationwide Mutual Ins. Co.*, 415 A. 2d 807. The medical benefit plan of Local 965 was created to provide medical benefits for the members. "It must not be forgotten that the primary object of all insurance is to insure. A construction should be taken which will render the contract operative rather than inoperative, and which will sustain the claim for indemnity, if reasonably possible, rather than exclude it." *Appleman, Insurance Law and Practice* §7386 (1976). Contrary to this principle, the administrator has made a strained interpretation of the SPD to make the insurance plan inoperative.

Application of Exclusions

The administrator of the Plan chose not to define "self-inflicted injury" or "engaged in an illegal occupation." That doesn't mean that the terms can be interpreted to mean whatever the administrator wants them to mean. These terms must be given the meaning normally attributed to them by a person of average intelligence and experience.

At page 38 of the SPD there is an "Alcohol, drug or substance abuse" exclusion for accidental death benefits. There is no such exclusion for medical or health benefits. This exclusion cannot be used to deny a claim for medical benefits because it is not a stated exclusion for these benefits. To deny coverage based upon this exclusion, the SPD must be rewritten. *Harrington v. New England Mutual Life Ins. Co.*, 873 F. 2d 166 (7th Cir. 1989-applying Illinois law).

Obviously, the limitations on page 39 under "Exclusions and General Limitations" for "self-inflicted injury such as suicide" and "illegal occupation" is ambiguous. This is demonstrated by the fact that the administrator didn't cite either in the initial denial of benefits. The exclusion is "deemed ambiguous where it is subject to more than one reasonable interpretation." *Santella V. Metropolitan Life Ins. Co.*, 123 F. 3d 456.

The administrator and the trustees must use and apply ordinary principles of construction and presumptions when construing the terms of the SPD, "the ordinary principles of construction according to which courts and administrators alike should arrive at their interpretations...Likewise... we must not fail to indulge in a presumption that ambiguous language favors the insured." *Kunin v. Benefit Trust Life Ins. Co.*, 910 F. 2d 534. The *Kunin* court reasoning has been adopted by our federal appellate court, see *Phillips v. Lincoln Nat. Life Ins. Co.*, 978 F. 2d 302. In *Phillips*, the 7th Circuit criticized the insurer for failing to define terms so that they could be understood by the average plan participant, "The requirement that a plan description be accessible to the average plan participant is no excuse for failing to supply [a definition], 'Insurers should not be permitted to exploit policy term ambiguities, which they could have avoided, to deny coverage to an unsuspecting insured.'" Obviously, an average plan participant would not understand the ingestion of alcohol or drugs as a "self-inflicted" injury or being engaged in an "illegal occupation." A subsequent 7th Circuit decision covering the same issue in an ERISA case specifically held that an exclusion in an SPD cannot be applied unless it unambiguously applies, "In other words, if an exception does not

unambiguously encompass a particular set of facts, it cannot be invoked to deny coverage in that instance." *McNeilly v. Bankers United Life Assur. Co.*, 999 F. 2d 1199.

Rules of Construction

The rule of *contra proferentem* applies to ERISA covered health benefit plans meaning that ambiguities in the SPD are construed against the insurer. *Kunin v. Benefit Trust Life Ins. Co.*, 910 F. 2d 534. In *Kunin* the court stated "Insurance policies are almost always drafted by specialists employed by the insurer. *In light of the drafters' expertise and experience, the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand; if it fails to do this, it should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence.* Moreover, once the policy language has been drafted, it is not usually subject to amendment by the insured, even if he sees an ambiguity; an insurer's practice of forcing the insured to guess and hope regarding the scope of coverage requires that any doubts be resolved in favor of the party who has been placed in such a predicament. Were we to promulgate a federal rule, we would find these common-sense rationales sound. Indeed, it would take a certain degree of arrogance to controvert an opinion held with such unanimity in the various states and to adopt a contrary view as the federal rule. We hold, therefore, that the rule of *contra proferentem* applies to the case at bar, regardless of whether it applies as a matter of uniform federal law or because federal law incorporates state law on this point (emphasis added).

"[The insurer] was required to furnish plan descriptions "written in a manner calculated to be understood by the average plan participant..." 29 USC §1022(a)(1). It would be improper and unfair to allow experts to define terms that were specifically written for and targeted toward laypersons. *This requirement provides a source from which we may fashion a federal common law rule; the terms should be accorded their ordinary, and not specialized, meanings." Brewer v. Lincoln National Life Insurance Company*, 921 F. 2d 150. An ERISA governed policy in *Santella v. Metropolitan Life Ins. Co.*, 123 F. 3d 456, contained an exclusion for self-inflicted injuries. The court held that death from a drug overdose was not self-inflicted rather it was an accident. "Without some evidence that she was aware of the risk of serious injury or death, we must conclude that Mrs. Eldridge did not die from intentional self-inflicted injury and thus that the exclusion did not bar her claim." A court may look to state law to determine whether the Administrator has accorded the term "self inflicted injury such as attempted suicide" its ordinary meaning. "...courts may look to state law for guidance so long as the state law is not contrary to the provisions of ERISA." *Mansky v. TMG Life Ins. Co.*, 54 F. 3d 1322. Illinois law does not support such an interpretation. In *Marsh v. Metropolitan Life Insurance Co.*, 70 IL App 3d 790, an employee of Caterpillar died from a heroin overdose. The Appellate Court held that a life insurance policy exclusion "which bars recovery for intentionally self-inflicted injury" was inapplicable and that "the defense has no merit in Illinois," see also *Russell v. Metropolitan Life Insurance*, 108 IL. App 3d 417, where the appellate court of this district held that alcoholic poisoning was not a "self-inflicted injury within the meaning of the exclusionary provisions" of an accidental death policy.

Case Law Construing Exclusions

In *West v. Aetna Life Insurance Company*, 171 F. Supp. 2d 856, in construing an ERISA governed policy the court quoted with approval this language "if an exclusion of liability is intended which is not apparent from the language employed, it is the insurer's responsibility to make such intention clearly known."

Illinois law provides that "All ambiguities are to be resolved in favor of coverage and exclusions from coverage must be construed narrowly," *Hartford Accident and Indemnity Ins. v. Washington National Ins.*, 638 F. Supp. 78, citing *Graham v. Mitchell*, 28 IL App. 3d 334, rather than broadly as the Administrator is attempting to do in the instant case. The federal appellate court for this district has adopted an identical rule. "The Seventh Circuit, however, has adopted the rule that ambiguous in an ERISA plan are to be strictly construed in favor of the insured." *Casey v. Udderholm Corp.*, 828 F. Supp. 566.

The administrator cannot invoke a "discretion" clause to override a definition of the phrase self-inflicted that is inconsistent with Illinois Law. *West, supra, McDaniel v. Medical Life Ins. Co.*, 195 F. 3d 999, *Mansker v. TMG Life Ins. Co.*, 54 F. 3d 1322, *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F. 2d 150. To do so demonstrates that the administrator is acting unreasonably and renders the SPD internally inconsistent. *West, supra.*

Rather than attempt to impose an unreasonable interpretation, the SPD should be rewritten as the court in *Harrington v. New England Mut. Life Ins. Co.*, 873 F. 2d 166, stated "If New England wishes to avoid liability in similar circumstances, it needs to rewrite its policy coverage." (Insured was fleeing a police officer and died in an automobile accident - the appellate court refused to find that the injuries were self-inflicted).

Interpretation of the Exclusion "Illegal Occupation"

It is stated in the denial letter that "Occupation is an activity in which one engages." There is no definition of "illegal occupation" in the SPD. "Illegal activity or occupation is a vague and broad exclusion." *Vowell v. Physicians Mutual Life Ins. Co.*, 711 F. Supp. 318. Not one case in American jurisprudence can be found which equates the word "activities" with the word "occupation." Occupation is defined in the New Webster's Dictionary as "One's principal employment, business, vocation, trade or other means of livelihood; the act of occupying or taking possession, as of land or buildings; seizure or control of a foreign country or territory by military invasion." "Activity" is defined in the same dictionary as "The state or quality of being active; the active faculty; active force; nimbleness; agility; liveliness; briskness. A natural or normal process; a specific action, pursuit, or sphere of actions; as, an extracurricular activity." The word occupation appears nowhere in the definition of "activity" and the definition itself gives no sense that "illegal occupation" and "illegal activity" are synonymous. There is no basis in logic or law for the administrator to interpret "illegal occupation" to mean "occupation is an activity in which one engages.

-4-

The term "illegal occupation" has been exclusively used in American jurisprudence and statutory law to describe criminal conduct engaged in for money. The administrator has chosen to create a meaning for the phrase "engaged in an illegal occupation" which is not consistent with the ordinary meaning of the term and an interpretation which has been specifically rejected by the courts.

In *Vowell, supra*, the following incident occurred: "Paul Vowel initiated an altercation with his son, Paul Randall Vowel ("Randy"). During the altercation, Paul Vowel went from his front yard into his home and returned with a shotgun. Paul fired the shotgun in the air, possibly in the direction of Randy, and ran toward Randy with the shotgun. Apparently, Randy returned to his car, grabbed a pistol off of his dashboard, fired a shot into the air, and then fired the gun toward his father killing him. Whether Paul Vowel intended to kill his son or knew his son had access to a gun is uncertain on the record before the court. The Winston County Sheriff's Department arrested Randy Vowel for manslaughter in the shooting death of Paul Vowel." The defendant insurance carrier had issued a policy insuring the life of Paul Vowel which contained an illegal activity or occupation exclusion that the insurer asserted as a defense to the claim. The court stated "*Certainly, Paul Vowel was not engaged in an illegal occupation.*"

Insurance policies frequently contain what is known as an alcohol exclusion, illegal activity exclusion or illegal occupation exclusion or some combination of the three. There has been no case where the illegal occupation exclusion has been applied to deny benefits where it is claimed the insured driver was intoxicated, see: *Cummings v. Pacific Standard Life Ins. Co.*, 516 P. 2d 1077, (claimed intoxication by insured with illegal occupation and alcohol exclusion - the appellate court refused to consider the insurer's claim that the illegal occupation policy exception applied because the insured's conduct was a contributing cause of any loss), *Sibley v. American National Ins. Co.*, 454 S.E. 2d 79, ( car wreck with intoxicated driver, no alcohol exclusion but illegal occupation and commission of felony exclusion - the illegal occupation exclusion was not considered), *Folks v. Kirk Paper Corporation Medical and Dental Benefit Plan*, 1999 U.S. Dist. LEXIS 359, (intoxicated driver, no alcohol exclusion, illegal activity and illegal occupation exclusion in plan - the court did not consider the illegal occupation exclusion). Likewise, *Eden v. United Benefit Life Ins. Co.*, 2001 U.S. Dist. LEXIS 13857 and *SCI./AEGIS Employee Benefit Trust Plan v. the Canada Life Assurance Co.*, 151 F. Supp. 2d 1044 *(*the "illegal occupation" exclusion was not allowed or not considered because it obviously did not apply).

The decision to deny coverage is a mistake. The provisions of ERISA and case law are in direct opposition to the administrator's decision. Rather than provide clear language specifying exclusions, the SPD is vague. Rather than construing the exclusions narrowly, the administrator has construed them broadly. The time to correct this mistake is now rather than later because the expense of attempting to uphold this unreasonable decision will be an added cost and ERISA does provide penalties for unreasonable actions.

Samuels, Miller, Schroeder, Jackson & Sly

By: /s/

SAMUELS, MILLER, SCHROEDER,
   JACKSON & SLY
Attorneys
225 North Water - Suite 301
P. O. Box 1400
Decatur, Illinois 62525
Telephone: (217) 429-4325

October 31, 2002

NOV 0 4 2002

OBA Midwest
8160 S. Cass Ave.
Darien, IL 60561

Attn: Lisa Frasco

Dear Ms. Frasco:

    I am faxing to you a supplement to the Brief previously filed on my behalf.

                         Yours truly,

                         Adam Woolums

## SUPPLEMENTAL BRIEF

This brief is filed in supplement to the prior brief filed on August 23, 2002.

## RULES OF CONSTRUCTION

The same rules of construction apply to insurance contracts as to any other contract. *Dempsey v. National Life & Acc. Ins. Co.*, 404 Ill. 423. The same rules of construction apply to group insurance as to other forms of insurance. *Metropolitan Life Ins. Co. v. Whitler*, 172 F 2d 631.

**Contract Read As A Whole; The Four Corners Rule**:

"A contract will be read as a whole and every part will be read as a reference to the whole." *Williston on Contracts*, Fourth Edition, Section 32:5 "A contract must be interpreted as a whole and in manner which gives reasonable meaning to all its parts and avoids conflict or surplusage of its provisions." 140 Fed 3rd 839 (9th Circuit 1998), with each part given effect and meaning. *Canutillo Independent School Dist. v. National Union Fire Ins. Co. of Pittsburgh*, 99 F 3rd 695 (5th Circuit 1996). "An interpretation which gives effect to all provisions of the contract is preferred to one which renders a portion of the writing superfluous, useless or inexplicable." *Williston*, at Section 32:5.

The Summary Plan Description ("SPD") provides at page 39 under the heading EXCLUSIONS AND GENERAL LIMITATIONS: "The following exclusions and general limitations apply to <u>all</u> benefits provided by the Operating Engineers Local No. 965 Health Benefit Plan unless specifically waived or modified by a particular benefit section." Two of these exclusions have been cited to deny benefits, namely: "Payment will not be made for self-inflicted injury such as attempted suicide whether sane or insane" and "...for loss...to which a contributing cause was such person's being engaged in an illegal occupation." There is a specific limitation "Alcohol, Drug or Substance Abuse" applicable only to accidental death and dismemberment benefits. There is no alcohol, drug or substance abuse exclusion that applies to medical benefits and to get around this the administrator has chosen to interpret the general exclusions on pages 39 and 40 for "self-inflicted injury such as attempted suicide" and "being engaged in an illegal occupation" to mean a loss which results from "alcohol, drug or substance abuse." The general exclusions and limitations to all benefits provided under the Plan apply to accidental death and dismemberment benefits. The Administrator's interpretation of the SPD renders the specific exclusion on page 38 for alcohol, drug or substance abuse surplusage.

Many health insurance policies contain an exclusion for coverage when the insured is injured while engaged in any illegal enterprise or activity. The Operating Engineers Local No. 965 Health Benefit Plan contains a much more limited exclusion and denies benefits only when the participant is injured when engaged in a felony. As set forth in the prior brief filed herein, the law clearly and universally provides that exceptions to liability must be expressed in unequivocal language. It is not permissible to broaden exclusions beyond the express terms in the Plan.

NOV 0 4 2002

-2-

  The general exclusions in the SPD must be interpreted with reference to the entire Plan, specifically limitations contained at other places in the SPD. "The ancient maxim *noscitur a sociis* summarized the rules of both language and law that the meaning of particular words may be indicated or controlled by associated words." The Summary Plan Description specifically excludes death and dismemberment benefits if the individual dies as a result of alcohol or drug usage. The existence of this specific exclusion means that no such exclusion can be inferred under the Exclusions and General Limitations beginning on page 39 of the SPD.

                    Samuels, Miller, Schroeder, Jackson & Sly

                 By: _____

SAMUELS, MILLER, SCHROEDER,
  JACKSON & SLY
Attorneys
225 North Water - Suite 301
P. O. Box 1400
Decatur, Illinois 62525
Telephone: (217) 429-4325

NOV 0 4 2002