IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ADAM T. WOOLUMS, | * | CASE NO. 04-3271 |
| Plaintiff, | * | |
| vs. | * | |
| Ray Hawkins, David A. Mifflin, Robert Brunner, Joe Klein and Mike Zahn, as | * | MEMORANDUM OF LAW |
| | * | |
| TRUSTEES OF OPERATING ENGINEERS LOCAL 965 | * | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

COMES NOW the Plaintiff, Adam T. Woolums, pursuant to C.D.IL-LR 7.1 and submits the following Memorandum of Law in support of Plaintiff's Resistance to Defendants' Motion for Summary Judgment.

**I.**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED FOR FAILURE TO COMPLY WITH THE LOCAL RULES OF THE CENTRAL DISTRICT OF ILLINOIS**

1. The local Rules of the Central District of Illinois pertaining to motion for summary judgment are clear and mandatory. They require that attached to the motion must be filed a *separate document* entitled "Statement of Undisputed Facts". C.D.IL-LR 7.1(D)(1). This Rule was not complied with.

2. These same Rules require that *every* motion raising issues of law "shall be accompanied by a Memorandum of Law including a brief statement of specific points or

1

propositions of law ... and identifying the Rule under which the motion is filed". C.D.IL-LR 7.1(D). This Rule was also ignored.

   3.  Failure to comply with these Rules mandate that Defendants' motion be dismissed.

## II.
## STANDARD OF REVIEW

Defendant argues in its Motion for Summary Judgment that because the SPD expressly grants Trustees full and complete discretionary authority to determine eligibility for benefits and construe the term of the plan and that the arbitrary and capricious standard review is applicable here citing the Supreme Court's decision in *Firestone*. (See Motion at p. 6) Actually what the Supreme Court held was that "the wholesale importation of the arbitrary and capricious standard into ERISA is unwarranted". This statement of the law in *Firestone* was noted by the Seventh Circuit in its decision of *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 900 F.2d 1138, 1142 (7th Cir. 1990) (citing *Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1035 (7th Cir. 1990)).

In this case, the key issue concerns the interpretation of policy terms. On that issue the Seventh Circuit in *Exbom* noted the Supreme Court held "a trustee may be given a power to construe disputed or doubtful terms, and in such a circumstance the trustee's interpretation will not be disturbed if reasonable". (900 F.2d at 1142). Again, the Seventh Circuit later noted that an interpretation of plan terms must be reasonable or will be deemed an abuse of discretion. *Celardo v. GNY Automobile Dealers Health and Welfare Trust*, 318 F.3d 142, 146 (7th Cir. 2003).

In the case of *Brewer v. Protexall, Inc.*, 50 F.3d 453 (7th Cir. 1995), the Court noted that the statutory law requires that ERISA plans be interpreted in the ordinary and popular sense as

would a person of average intelligence and experience would and continued by holding that the administrator can abuse its discretion by failing to apply the rule that ambiguities must be resolved in favor of the insured. The Court went on to hold that a plan participant cannot be denied benefits under limitation which is ambiguous as to its application to his benefit claim.

Based on the records submitted by Defendants in their Motion for Summary Judgment, the Trustees conducted no investigation of facts and apparently made no factual investigation to deny benefits other than, apparently, looking at police reports. Where no independent investigation of facts occurred and benefits are denied, this Circuit requires that a *de novo* standard of review be applied. This Circuit states under those circumstances a bench trial and not a motion for summary judgment is appropriate and must be employed. Where there are contested issues of material fact, the District Court is precluded from granting summary judgment. Fed.R.Civ.P. 56(c). *Casey v. Uddeholm Corporation*, 32 F.3d 1094 (7th Cir. 1994).

### III.
### DENIAL OF BENEFITS FOR A SINGLE USE OF A CONTROLLED SUBSTANCE CANNOT REASONABLY BE HELD TO BE AN "ILLEGAL OCCUPATION"; SUCH DETERMINATION VIOLATES THE ERISA REQUIREMENT THAT AN SPD BE WRITTEN IN A MANNER CALCULATED TO BE UNDERSTOOD BY THE AVERAGE PLAN PARTICIPANT AND SPECIFICALLY LIST CIRCUMSTANCES THAT RESULT IN THE LOSS OF BENEFITS

The Defendants in their Motion, concede the fact that ERISA law requires the SPD be written in a manner calculated to be understood by the average plan participant and that they must list the circumstances which result in the loss of benefits. (See Motion part D at p. 11).

Although the SPD has a definition section to aid plan participants, the Defendants did not bother to define what they meant by "illegal occupation" which excluded benefits under the SPD. (See pp. 39-40 of SPD attached as Exhibit "B" to Defendants' Motion).

ERISA law requires that any interpretation Defendants use to deny benefits must be reasonable in the context of how would an average plan participant would understand the meaning of the term. This mandatory requirement is conceded by Defendants in their Motion. (See Motion at p. 11). The Trustees argue that they can interpret "illegal occupation" to mean any "illegal activity". They assert that the words "occupation" and "activity" are synonymous and really one and the same thing. (See Motion at p. 9).

This Circuit has already held that if a plan excludes injury involving "illegal acts", it would be enforced where a person drove recklessly and attempted to pass another vehicle on a yellow line, lost control of his vehicle and crashed. *Celardo v. GNY*, 318 F.2d 142 (7th Cir. 2003).

In this case, had this SPD plan specifically prohibited "illegal acts" instead of an "illegal occupation", there would have been no complaint filed in Federal Court by the Plaintiff because the decision in *Celardo* is dispositive. However, the language that Defendants *chose* to employ in the SPD does not state an exclusion for "illegal acts" but it excludes for an "illegal occupation". What Defendants seek here is for this Court to "construe" illegal occupation to really mean illegal acts. It should be noted in this juncture the Plaintiff had no choice concerning the meaning of the SPD or whatever exclusions apply; he simply must deal with it as stated.

The real issue here is simple: Will an ordinary plan participant looking at Defendants' SPD understand that an exclusion for "illegal occupation" really means he will be denied benefits for any illegal act? Looking at that exclusionary language for illegal occupation would he understand that if he was jaywalking in an intersection and was run over by a car that had run a red light, he could nevertheless be excluded from benefits because he was involved in an "illegal occupation" at the time?

4

Plaintiff submits that an ordinary plan participant would *never* anticipate that if he was jaywalking he would be involved in an "illegal occupation". To an ordinary person "occupation" would be a job. An ordinary person would consider an illegal occupation or job to mean if you were involved in prostitution or dealing in drugs for profit. The ordinary person would then obviously consider that the exclusion employed by the Defendants in their SPD would be applicable. Here, what the Trustees really want the Court to do is to construe "illegal occupation" to really mean "illegal acts". That, Plaintiff submits, is unreasonable on its face and an abuse of discretion and clearly violates the ERISA mandate that they provide exclusionary language that is clear and understandable to the ordinary lay person. Defendants argue, as they must, that "illegal occupation" is not *ambiguous* because it means "*activity* and vocation". They assert they have the right to "construe" the term "occupation" to include "activities". (See Motion at p. 9).

That is their argument but it is not the law. Their argument they can construe "illegal occupation" to include illegal activity is a *concession* by them, the language they employed to deny benefits failed to meet the congressional mandate that exclusionary language be written so that it could be clearly understood by the plan participant. Their fiduciary duty is to make certain that exclusionary language is plainly understood by the ordinary person. Lawyers who write these exclusionary plans must write them in plain English easily understood by plan participants.

Even where an administrator has discretion to construe terms of the plan, a plan participant cannot be denied benefits under a limitation which is ambiguous as to its application. *Brewer v. Protexall, Inc.*, 50 F.3d 453, 457 (7th Cir. 1995).

Plaintiff submits that to determine whether an interpretation of "illegal occupation" is reasonable, the Court must view that analysis on the basis of whether a jaywalker hit by a car

5

that ran a red light would look at this SPD plan and be aware he would get no benefits because he was involved in an "illegal occupation". Plaintiff submits that it is simply not reasonable to conclude that an ordinary plan participant would understand looking at this SPD plan that if he was involved in jaywalking he could be excluded from any benefits because he was involved in an "illegal occupation".

In conclusion, the Defendants had a duty to write this plan with clear, unambiguous, easy to understand language that a plan participant could understand. Their argument that an exclusion for illegal occupation really means illegal acts concedes that it was not written in a fashion that could be understood by the ordinary plan participant and therefore their interpretation is unreasonable and an abuse of discretion. The term "illegal occupation" clearly pertains to a job if it is going to be looked at from the view of the ordinary person. It is not, as Defendants suggest, synonymous with "illegal activities". If the Court allowed Defendants to take the term "illegal occupation" and convert it to "illegal activity", the Court is then simply allowing the Defendants to violate the congressional mandate to write exclusionary language in a manner that can be clearly understood by the average plan participants and instead rewriting the exclusionary language for them.

The lawyers for the Defendants that wrote this SPD could have simply excluded benefits for "illegal activities". It is unreasonable and an abuse of discretion for the Defendants to suggest to the Court that "illegal occupation" really means "illegal activities". They could have applied the same limitations applicable to accidental death and dismemberment benefits for alcohol or drug abuse, but did not. Instead they chose to construe illegal occupation to include that limitation. If there is a specific exclusion for alcohol or drug abuse, it is unreasonable to

hold that the average plan participant would understand the limitation for "illegal activity" to mean the same thing.

Plaintiffs, in the short time frame we had, have done considerable research in the United States and have been unable to find any ERISA reported cases where "illegal occupation" was construed to mean an "illegal activity".

Because Defendants did not write in the plan an exclusion for illegal activities; they cannot deny benefits to Plaintiff.

### IV.
### DEFENDANTS ATTEMPT TO DENY BENEFITS TO PLAINTIFF BECAUSE HIS INJURIES WERE "SELF-INFLICTED" OR HE WAS INVOLVED IN "SUBSTANCE ABUSE" SHOULD NOT BE SUSTAINED WHEN THE TRUSTEES DID NOT DENY BENEFITS ON THAT BASIS; THEY MADE NO FACT FINDINGS TO SUPPORT THAT CONCLUSION AND PLAINTIFF DENIES HE INTENDED TO INJURE HIMSELF

ERISA sets certain minimum requirements when the plan administrator denies benefits. One of these is the reason for denial must be communicated to the claimant. (29 U.S.C.A. § 1133).

Clear statements concerning the reasons for denying claims are necessary so that there be a full fair review on appeal knowing what evidence was relied on below and there was a consideration of the evidence on both sides prior to reaching decision. *Halpin v. W.W. Grainger, Incorporated*, 962 F.2d 685(7th Cir. 1992)

In this case on appeal, Defendants seek summary judgment based upon their conclusion Plaintiff's injuries were "self-inflicted". They noted that the fund wrote a denial of benefits response to Adam Woolums on June 28, 2002, which specifically stated that the injuries were self-inflicted and were incurred while being engaged in an illegal occupation. (See Motion at p. 8 and Exhibit "E").

7

However, the Trustees acknowledge that when Plaintiff appealed the initial plan administrator's denial of benefits to the Trustees, the claim was denied by the *Trustees* under the "illegal occupation" exclusion and the Trustees made no findings with respect to the "self-inflicted" injuries exclusion. (See Motion at p. 10). The federal regulations require that if the Trustees were going to consider denying the claim based upon the self-inflicted injury exclusion, the Plaintiff is entitled to a full and fair review and to present evidence at issue. The affidavits of the Plaintiff and his father clearly establish they were never given an opportunity to present any evidence whatsoever before the Trustees and the Trustees made no findings of fact on the issue. (29 U.S.C.A. § 1133).

Because the Trustees never did consider this issue they certainly cannot present it to this Court and seek summary judgment on a matter that the Trustees themselves never considered in denying benefits. For this reason alone, summary judgment on this issue should be denied.

Assuming *arguendo*, that the Court is going to consider this issue notwithstanding the fact the Trustees did not, there certainly is a question of fact that should be resolved by trial. The Trustees never made any findings of fact concerning this issue. All that was stated is the counsel's conclusionary statement that Plaintiff being under the influence of alcohol or illegal substance abuse are considered voluntary acts and self-inflicted injuries. (See Motion at p. 8). In response, Plaintiff has filed an affidavit stating under oath that he simply lost control of his vehicle at the time of his injury and he never intended to injure himself. Under the rules of summary judgment, this then becomes a fact issue and is not a matter for summary judgment.

Further, the Trustees argue that, as a matter of law, injuries that arise from a combination of liquor or substance abuse and motor cars are self-inflicted. *Sisters of the Third Order of St. Francis v. Swedishamerican Group Health Benefit Trust*, 901 F.2d 1369, 1372 (7th Cir. 1990).

(Para. *14* of Motion at p. 4). That case was the applicable law based upon the *facts* presented by the Plaintiff in that case. If given the opportunity, the Plaintiff in this case intends to present facts that when Plaintiff was injured he did not intend to injure himself at the time of the accident.

There are clear fact issues here that cannot be resolved by summary judgment. The Plaintiff by affidavit states he simply lost control of his vehicle and never intended to injure himself. (See Exhibit "K", Affidavit of Adam Woolums). Determination of whether his injuries were self-inflicted requires facts that be determined at trial.

In *Casey v. Uddeholm Corporation*, 32 F.3d 1094 (7th Cir. 1994) Casey attempted suicide by throwing himself in front of an elevated train and was severely injured. Benefits were denied because his injuries were determined not to be accidental as required by the plan. There the Court noted that "self-inflicted injury may be accidental". The Court noted Casey claimed he was insane at the time and lacked the mental capacity to deliberately injure himself. The Court held the policy language ambiguous. The Court noted *no* findings were made by the plan administrator concerning Casey's mental status and therefore *de novo* review of the issue is required. The Court reversed the District Court's grant of summary judgment.

In the case at bar, no investigation of facts occurred, and no witnesses were interviewed. Perhaps that is why the Trustees *chose* not to deny benefits on that basis. By reason of the above, summary judgment should not be granted on this issue.

## CONCLUSION

Although ERISA imposes on plan administrators the duty to administer plans solely for the benefit of the interest of beneficiaries and for the "exclusive purpose of providing benefits" (29 U.S.C.A. § 1104(a)(1)) where the plan gives discretion (what plan does not presently do

9

that?) a beneficiary who is denied benefits is no longer on a level playing field on appeal but climbing a cliff.

This case is a classic example. The Defendants initially denied benefits for "substance abuse" citing the section of the SPD that applies to accidental death and dismemberment benefits. Only when the Plaintiff's father pointed out the error to them and appealed the initial ruling of the plan administrator, did the Trustees prudently drop that reason for denying benefits and then asserted that driving under the influence is a "illegal occupation". This is done by Defendants with their lawyers preparing an affidavit for a Trustee to sign declaring that "illegal occupation" really means "illegal activity". (See Exhibit "L", Affidavit of Darrell Woolums, paras. 2-5).

Initially, Defendants also denied benefits because they claimed claimant's injuries were "self-inflicted". That finding was initially made by the plan administrator but when the matter was appealed to the Trustees they never considered the issue. That is, the Trustees never gave the Plaintiff an opportunity to be heard on the question; made no fact findings on that issue; interviewed no witnesses and made no decision. Nevertheless, the Trustees now revive that issue for this Court's consideration even though the Trustees did not consider it.

If this record is sufficient for summary judgment against the Plaintiff, the Court should consider if any beneficiary will ever seek relief in the District Court from a plan administrator and Trustees denial of benefits when they know, if they lose, the Court may also assess attorney fees against the Plaintiff simply because he asserted a claim.

For all of the reasons asserted in the Resistance to the Motion and accompanying Memorandum of Law, the Court should deny the Motion for Summary Judgment and submit this matter for trial on the issues.

Respectfully submitted,

ADAM T. WOOLUMS, PLAINTIFF


By:   s/ Michael R. Mundt
     Michael R. Mundt
     MUNDT, FRANCK & SCHUMACHER
     1231 Broadway, Suite 300
     Denison, IA 51442
     712-263-3159
     712-263-4507 (fax)
     E-mail: mundt@frontiernet.net
            mfslaw@frontiernet.net


**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| James P. Moody | Edward Q. Costa |
| Cavanagh & O'Hara | Samuels, Miller, Schroeder, Jackson & Sly, LLP |
| 407 East Adams St. | 225 North Water St., Suite 301 |
| P.O. Box 5043 | P.O. Box 1400 |
| Springfield, IL 62705 | Decatur, IL 62525 |


     s/ Michael R. Mundt
     Michael R. Mundt
     Attorney for Plaintiff
     MUNDT, FRANCK & SCHUMACHER
     1231 Broadway, Suite 300
     Denison, IA 51442
     Telephone: 712-263-3159
     Facsimile: 712-263-4507
     E-mail: mundt@frontiernet.net
            mfslaw@frontiernet.net